UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEANDRE BRADLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:19-cv-752-GCS |
| ) | |
| WEXFORD HEALTH SOURCES, ) | |
| INC., ) | |
| RON SKIDMORE, ) | |
| MOHAMMED SIDDIQUI, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In July 2019, Plaintiff Deandre Bradley, an inmate in the custody of the Illinois Department of Corrections, filed suit against a number of individuals who worked, in some capacity, at Menard Correctional Center ("Menard"). The Court severed Bradley's claim into multiple actions, including this one. Relevant to this case, Bradley alleges that Defendants Wexford Health Sources, Inc. ("Wexford"), Ron Skidmore, and Mohammed Siddiqui were deliberately indifferent to his serious medical needs by refusing to accommodate him for a properly fitted wheelchair with a specialized seat cushion.

Along with his initial complaint, Bradley filed a motion for temporary restraining order and for a preliminary injunction. (Doc. 3). The request for a temporary restraining order was denied on July 12, 2019. (Doc. 6). On July 22, 2019, Bradley filed an amended complaint seeking monetary damages, a temporary restraining order, and a preliminary

injunction. (Doc. 7). He also filed an amended motion for a temporary restraining order and a preliminary injunction. (Doc. 8).

In his amended complaint, Bradley continues to allege that Wexford, Siddiqui, and Skidmore were deliberately indifferent to his serious medical needs related to his wheelchair and the associated cushions provided to him. Bradley's amended request for a temporary restraining order was denied on August 6, 2019. (Doc. 10). Now before the Court are his two motions for a preliminary injunction. (Doc. 3, 8). The Court held a hearing on Plaintiff's motions on December 27, 2019. For the reasons delineated below, the motions are **DENIED**.

## FACTUAL BACKGROUND

### A. Allegations in Plaintiff's Amended Complaint and Motions for Preliminary Relief

At all times relevant to his complaint, Bradley was incarcerated at Menard. Defendant Wexford provides healthcare services for inmates at Menard. Defendant Siddiqui is a doctor employed by Wexford and is the medical director at Menard. Bradley alleges that Defendant Skidmore is the assistant ADA coordinator at Menard and refers to him as a nursing supervisor.

Bradley is a paraplegic and cannot walk. He must use a wheelchair, and the wheelchair he currently uses causes him to get pressure sores. In his complaint, he describes the wheelchair he was provided at Menard as large and heavy and alleges that it is dangerous to use in combination with his hypertension and asthma. The wheelchair,

which is ill-fitting, makes it difficult for Bradley to go about his daily activities and causes him pain.

Bradley alleges that he told Dr. Siddiqui and Skidmore that he needs a properly fitted wheelchair and a specialized seat cushion to prevent pressure sores and additional pain. He asked them to send him to a specialist for a fitting, but his request was refused. They allegedly told Bradley that the expense of the referral was a factor in their refusal. In July 2019, Bradley was provided with a smaller, lighter wheelchair, but he claims it did not address all his needs. According to Bradley, Wexford does not employ in-house physicians who can properly fit adequate wheelchairs, and, at the same time, Wexford refuses to provide a proper wheelchair and specialized seat cushion because of cost concerns.

In his motions and supplements, Bradley also alleges that the wheelchair he received in July 2019 was causing him to have right-leg paralysis, inability to stand or walk, inability to sit up on his own, arthritis in his neck which causes his hands to become unusable for hours at a time, and pressure sores. He also alleged that this wheelchair was damaged during an alleged assault by correctional officers. He claims that a wheel came off the rim and the right food pedal broke.

**B. Allegations in Defendant Skidmore's Responsive Brief**

Defendant Skidmore submitted additional facts in his response to Plaintiff's request for a preliminary injunction. On September 2, 2018, Bradley was given a medical permit for a new wheelchair and a double mattress order. On January 8, 2019, Bradley was seen by healthcare staff for other issues, but he complained of pain due to his

wheelchair. He was referred to Dr. Siddiqui, but he refused, stating he wanted to see someone "qualified." He refused to sign a refusal of evaluation form.

The healthcare unit delivered a wheelchair and seat cushion to Bradley's cell. He was seen by healthcare staff on February 23, 2019, for headaches, and staff noted that Bradley had concerns about his wheelchair. On March 12, 2019, Bradley was seen for abrasions sustained while transferring himself from his wheelchair to the toilet in his cell. On March 19, 2019, Bradley fell from his wheelchair in his cell and received treatment from the healthcare unit. He was examined on April 24, 2019, and healthcare staff noted that Bradley needed rails to transfer safely between his wheelchair and the toilet and his bed. They also discussed potential physical therapy with Bradley to help him regain strength, if possible.

Bradley's wheelchair was modified in July 2019 to make it easier to transfer from his wheelchair to his bed and to the toilet. On July 20, 2019, healthcare staff noted that Bradley had a pressure ulcer on his upper thigh where it rests on his seat cushion. Bradley had the wound tended to by healthcare staff during July and August 2019.

**C. Evidentiary Hearing**

The undersigned held an evidentiary hearing on December 27, 2019. At the hearing, Bradley testified that he received another new wheelchair on December 11, 2019, replacing the one given to him in July 2019 that was broken during an alleged assault by correctional officers. He also testified that he currently has two cushions – one wedge-shaped and the other flat – and that he has not had a pressure sore since September 2019. The cushions are gel-based, but Bradley wants an air cushion. Before he transferred to

Menard, Bradley was housed at Pinckneyville Correctional Center. Healthcare staff at Pinckneyville gave Bradley an air cushion, which he maintains he needs to prevent pressure sores. Bradley believes his current cushion is made from foam and that it is insufficient to help reduce pressure.

Bradley admitted that he is able to get in and out of his wheelchair without issue and that he is able to get around his cell. He uses the wedge cushion under his legs with the taller end under his knees. He uses the flat cushion over the armrest on his right side, as he leans to the right while seated. Bradley claims that the wedge cushion is not properly fitted to his wheelchair and that it impedes the movement of the wheels. He also said his new wheelchair is too small and that the size that was ordered for him does not align with his height or weight appropriately. Bradley indicated that his main concern with his wheelchair and its cushions is whether it could impede his ability to move around town after he is released from prison, rather than a concern for his mobility at this time.

Angela Crain, the healthcare unit administrator at Menard, also testified about Bradley's chair and accommodations. She testified that wedge cushions are helpful for improving posture and for preventing patients from slipping out of wheelchairs because they help the knees to sit higher than the hips. According to Crain, Bradley's other cushion is a gel cushion, which helps to relieve pressure for people who are less mobile. She testified that air cushions, like the cushion Bradley desires, are more likely to cause pressure than to relieve it, and that is why Bradley was switched to a gel cushion, though

there was testimony to suggest that air cushions are not permitted at Menard due to security risks related to sharp edges and materials.

Crain also testified that when a wheelchair is ordered for an inmate, as one was ordered for Bradley in December 2019, the vendor asks staff at Menard for the inmate's height and weight. That information is taken from something called the Offender 360 program, which Crain said is updated yearly with new height and weight information for each inmate. Inmates are not measured anew each time a chair is ordered, but the chairs are ordered with an inmate's measurements in mind.

## LEGAL STANDARDS

### A. Preliminary Injunction Standard

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The plaintiff must show four elements for an injunction: (1) plaintiff is likely to succeed on the merits; (2) without an injunction irreparable harm against the plaintiff is likely; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Id.* The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Id*.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See*

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (noting that the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by a defendant, as a mandatory preliminary injunction. *See Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958)(stating that "[a] preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

**B. Deliberate Indifference Standard**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a

medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") ((internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly

or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Hammond*, 123 F. Supp. 3d at 1086 (noting that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441.

ANALYSIS

**A. Likelihood of Success on the Merits**

The fact that Bradley has a serious medical need is not contested by the parties. Rather Defendants argue that they have not been indifferent to Bradley's need for a properly fitted wheelchair that allows him appropriate mobility without complications (like pressure sores). Bradley has been given four wheelchairs during his incarceration. His complaint of a too heavy and too bulky chair was met with a new, lighter chair. When that chair broke during an incident with correctional officers, it was replaced promptly. Bradley currently has two cushions designed to keep him comfortable and in a healthy position in his wheelchair. He does not like his cushions, testifying that the wedge cushion rubs against the wheels of his chair when he tries to move around. Nonetheless, he testified that he is able to get around his cell in segregation. Similarly, Bradley wants a more customized wheelchair and feels Defendants should have measured him more carefully, but Defendants maintain that his chair was ordered and sized appropriately based on his size and that special measurements were not necessary.

The evidence before the Court demonstrates that Defendants are aware of Bradley's complaints with his wheelchair, but their choices of cushion-type and the appropriate size of the wheelchair appear to be based on professional judgment rather than deliberate indifference to Bradley's needs. Defendants, through the testimony of Angela Crain, show that their judgment is that the air cushion Bradley desires is inappropriate for his medical conditions and that they believe his wheelchair is the proper size. Bradley's wheelchair has been replaced when it was broken or when issues

arose. All evidence points to Bradley's needs and complaints being attended to, though he may not like the choices made by the healthcare staff.

At this stage, the evidence demonstrates that Bradley's complaint in this case is that he wants different care that what he is receiving, but there is insufficient evidence of a knowing or reckless disregard for his medical needs. A prisoner's mere disagreement with the chosen course of medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or the "best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Here, Bradley has a functioning wheelchair with cushions deemed appropriate by medical professionals and has not had issues with pressure sores in several months. This case appears to center around a disagreement as to appropriate medical treatment and assistance. As such, the Court considers Bradley's likelihood of success on the merits low for purposes of his request for preliminary relief.

### B. Risk of Irreparable Harm

Plaintiff must demonstrate that, absent a preliminary injunction, he will suffer irreparable harm prior to a final resolution of his claims on the merits. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)(citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait until the end of trial to get that relief. *See Roland Mach. Co.*

*v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Plaintiff must demonstrate more than a "mere possibility of harm." *Whitaker by Whitaker v. Kenosha Unified School Dist. No. 1 Bd. of Education*, 858 F.3d 1034, 1045 (7th Cir. 2017)(citing *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 787 (7th Cir. 2011). The harm need not "actually occur before injunctive relief is warranted," nor must it be "certain to occur before" the Court reaches a decision on the merits. *Id.* "Rather, harm is considered irreparable if it 'cannot be prevented or fully rectified by the final judgment after trial.'" *Id.* (citing references omitted).

Here, Bradley admitted that he had no pressure sores at the time of the preliminary injunction hearing. He testified that he did not have pressure sores for months. The evidence also suggests that Bradley had occasional pressure sores when he had the air cushion that he asks the Court to order Defendants to provide to him. He admits that he is able to get around as he needs to with his current wheelchair and cushion arrangement. He conceded that he is more concerned about what could happen in the future when he is released from incarceration and must use his wheelchair to move around town, suggesting that his current situation does not pose a risk of irreparable harm.

Taken together, the evidence before the Court shows that the risk of irreparable harm to Bradley during the pendency of this action is low. Similarly, there is insufficient support in the record before the Court that Bradley lacks an adequate remedy at law and that traditional legal remedies are inadequate to address his concerns and alleged injuries. *See Roland Mach Co.*, 749 F.2d at 386; *Girl Scouts of Manitou Council*, 549 F.3d at 1095. Given Bradley's low likelihood of success on the merits, the unlikeliness of

irreparable harm to him absent preliminary relief, and the availability of adequate remedies at law, he fails to satisfy the threshold requirements for receiving injunctive relief, and no preliminary injunction shall issue. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086 (noting that courts only move on to the balancing phase if a moving party can satisfy the inquiries made in the threshold phase of evaluating a request for preliminary relief).

## Conclusion

For the above-stated reasons, Plaintiff's motions for preliminary injunction (Doc. 3, 8) are **DENIED**. By separate order, the Court will set a schedule for addressing Defendants' exhaustion-based affirmative defenses.

**IT IS SO ORDERED.**

Dated: January 31, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.01.31 12:22:41 -06'00'

GILBERT C. SISON
United States Magistrate Judge